# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Gray Hooded Sweatshirt with Red Logo and other clothing items | )<br>)<br>)  Case No. '20 MJ5490<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the  Southern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC sec. 2113 | Bank Robbery |

The application is based on these facts:
See Attached Affidavit of FBI Special Agent Jesse M. Stoda, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Jesse M. Stoda, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
 telephone  *(specify reliable electronic means)*.

Date:  12/22/2020 

*Judge's signature*

City and state:  San Diego, California    Hon. Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jesse M. Stoda, being duly sworn, declare and state:

## PURPOSE OF AFFIDAVIT

1. This affidavit supports the application for a warrant to search and/or seize the following items for and as evidence of crimes, in furtherance of a bank robbery investigation:

   a. Black Ultimate Mobile Xperience (UMX), Assurance Wireless cellular telephone (the **Target Phone**), as described in **Attachment A-1**.

   b. Gray Hooded Sweatshirt with Red Logo and other clothing items (the **Target Property**).

2. Based on the information below, there is probable cause to believe the search and further analysis of the **Target Phone** will result in evidence of the commission of a crime in violation of Title 18, United States Code, Section 2113(a) (Bank Robbery), as described in **Attachment B-1,** and that the **Target Property** constitutes evidence of the aforementioned crime, as described in **Attachment B-2**.

3. The **Target Phone** was in Cary GOWERS' possession at the time of his arrest on December 8, 2020, and is currently in federal custody located at the San Diego Federal Bureau of Investigation (FBI) field office, 10385 Vista Sorrento Parkway, San Diego, California, 92121. The **Target Property** was being worn by GOWERS when he was arrested on December 8, 2020, and is currently in the custody of the Metropolitan Corrections Center (MCC), 808 Union Street, San Diego, California 92101.

4. Except as otherwise noted, information set forth in this affidavit has either been observed or provided to me by law enforcement officers with whom I have spoken, who were involved in this investigation, or whose reports I have read and reviewed. Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth my own observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

5. The result of my training and experience, the facts gathered during this investigation, and my conversations with other Special Agents of the Federal Bureau of Investigation (FBI), and Task Force Officers (TFOs), as well as Detectives and Officers and other local investigators familiar with violent crimes, commercial robberies, and bank robberies, form the basis of the opinions and conclusions set forth below.

6. Because this affidavit is being submitted for the limited purpose of seeking the search warrants specified above, I have not set forth each and every fact learned during the course of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the requested warrants. Dates and times outlined below are approximate.

## TRAINING AND EXPERTISE

7. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

8. I am a Special Agent of the FBI, and have been so employed since July 2017. I am assigned to the San Diego Field Division, Violent Crimes Task Force. I am also assigned to investigate various crimes that include, but are not limited to, bank robberies, commercial robbery chains, kidnappings, extortions, fugitives, assaults on federal officers, murders of United States citizens in foreign countries, serial murders, and serial rapists. During the course of my duties, I have prepared search and arrest warrants and have participated in the execution of search and arrest warrants.

9. I have received twenty-one weeks of training at the FBI Academy in Quantico, Virginia. During that training, I received instruction regarding a wide variety of investigative techniques that are commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of sources, law enforcement tactics, search and seizure laws and techniques, surveillance, forensic techniques, interviewing, digital evidence, and a variety of other subjects. I have

acted as the lead investigator on a variety of cases and have participated in multiple cases that have focused on robberies and firearms.

10. My experience as an FBI Special Agent has included the investigation of cases involving the use of cellular phones, computers, and the internet to commit crimes. I have received additional training and gained experience through interviewing witnesses, subjects, and victims of violent crimes. I have participated in the execution of searches and seizures, and received advanced training focused on arrest procedures, search warrant applications, cellular device exploitation, computer crimes, computer evidence identification, and various other criminal laws and procedures. A number of these investigations have dealt with the use of electronic communication devices to assist in the commission of the crime. Persons involved in criminal activity often conduct research on potential targets using cellular phones, computers, and the internet and communicate via these devices in furtherance of their criminal endeavors. I have received instruction from and read reports and search warrant affidavits prepared by other investigators/officers on tracing IP addresses, Internet Service Providers, e-mails, expanded headers, and computer/ internet tools used to trace and identify the persons who commit computer crimes. This information has proven to be invaluable in proving an individual's involvement, or lack thereof, in the crime being investigated.

11. In connection with bank robbery and commercial robbery investigations in which I have participated, as well as upon information related to me by other individual(s), including conversations with other law enforcement officers, I am familiar with the methods used by individuals who commit bank robberies. Bank robberies are typically planned in advance; individuals committing bank robberies often communicate and coordinate with each other prior to, during and after each robbery. Furthermore, in most bank robberies, surveillance of the targeted location is conducted prior to the attempt.

12. I have led and participated in a multitude of investigations, and my interactions with other agents, and other state and local law enforcement officers familiar

with violent crimes, as well as my training, form the basis of the opinions and conclusions set forth below, which I have drawn from the facts set forth herein, and set forth in substance not verbatim, unless otherwise noted.

## BASIS FOR EVIDENCE SOUGHT IN SEARCH WARRANT

13. Based on the above investigations, and my training, experience, and consultation with other law officers regarding robberies and other violent crimes, I am aware that:

    a. Multiple individuals coordinating a robbery will utilize cell phones to arrange meeting times and locations and otherwise discuss the logistics of the robbery.

    b. Individuals involved in robberies and other violent crimes who are working in concert with each other often communicate using cellular telephones to plan and carry out robberies.

    c. Individuals involved in robberies and other violent crime use cellular telephones to increase their mobility and coordinate illicit activity, through traditional audio conversations, emails, social media, and other electronic applications. Records of these communications are often stored on social media accounts and on email accounts, both of which may be found on a cellular telephone.

    d. Individuals involved in robberies may utilize web or social media searches related to robbery targets, travel to and from their robbery targets, searches related to methods or techniques for robbery, searches related to possible safety measures at their robbery targets, and searches made after the robberies related to law enforcement investigations into the robberies.

    e. Individuals involved in robberies and other violent crimes often have electronic documents and files, which were used to aide and facilitate the commission of the crime. In many instances, these files can contain additional forensic and transactional evidence linking the subject to the crime and/or identification of other co-conspirators. These files may be saved within email or social media accounts.

    f.        Individuals involved in robberies and other violent crimes often will use cell phones to take photographs of stolen items in order to facilitate the sale of those items. Additionally, individuals involved in robberies and other violent crimes may post these photographs to social media in order to further facilitate the sale.

    g.        Individuals involved in robberies and other violent crimes often use social media accounts to post photographs of themselves wearing clothing that is later worn during a robbery or crime. These photographs are saved to their accounts and posted before and after the robberies, but are often not available to be viewed by the public. These photographs are also often saved to the phone's photo applications and can be carried over from an old phone to a new phone via a cloud application.

    h.        Individuals involved in robberies and other violent crimes may also use their cellular telephones to exchange celebratory remarks with co-conspirators or others after the successful competition of a bank robbery.

    i.        Through training and conversations with other special agents and experts, I have learned locations and/or GPS information can be electronically stored within social media accounts and extracted for analysis. This information can indicate times a particular device or social media posting was made near a specific location, such as the scene of a robbery or the residence of a co-conspirator.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

14.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a

5

secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may several months.

15. Following the issuance of this warrant, I will collect the **Target Phone** and subject it to analysis. All forensic analysis of the data contained within the **Target Phone** and its memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

16. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety days of the date the warrant is signed, absent further application to this court.

## PROBABLE CAUSE

*Bank Robbery*

17. On December 8, 2020, at approximately 1:18 p.m., a suspect, later determined to be Cary GOWERS, entered California Coast Credit Union (CCCU) located at 777 J Street, San Diego, CA 92101, in the Southern District of California. GOWERS entered the CCCU, and approached the victim teller stating, "I want a cash withdrawal." The victim teller slid a fishing net (which was being used at the credit union for social distancing) under the COVID protection barrier, and GOWERS placed

a note into the net that stated, "I Have a BOMB and nothing to lose. You have money and I want it." GOWERS then stated, "The quicker you do this, the faster I will leave." The teller passed GOWERS approximately $460 in cash. GOWERS put the cash in the right front pocket of his sweatshirt and left the bank.

18. GOWERS was described as a bald white male, in his mid-40s, with a medium build, standing approximately 6' tall, and approximately 200 pounds. GOWERS appeared to be wearing a black neck gaiter covering part of his face, gray zip-up hooded sweatshirt with a red logo on the back, dark shirt underneath, blue jeans, and white shoes.

*Arrest of Gowers*

19. On December 8, 2020, at approximately 2:55 p.m., investigators observed an individual walking northbound on 6th Avenue, in between Island Avenue and J Street, approximately two blocks away from CCCU. The individual matched the description of the robber—a white male, bald, medium build—and appeared to be wearing the same clothing—a gray zip-up hooded sweatshirt with a red logo on the back, dark shirt underneath, blue jeans, and white shoes (the **Target Property**). He was detained by FBI Agents. Upon being detained, GOWERS stated to investigators that they probably approached him "because of what happened at the credit union." During a search of GOWERS' person, cash was found in both GOWERS' left and right pockets. GOWERS advised the cash in his left pocket was his and the cash in his right pocket was not his. Additionally, the **Target Phone** was found in one of GOWERS' pockets.

20. A short while later, at approximately 3:15 p.m., the victim teller positively identified GOWERS as the robber via a curbside lineup. GOWERS was placed under arrest, and transported to San Diego Police Department (SDPD) headquarters (HQ).

21. At SDPD HQ, investigators counted the cash found on GOWERS, which revealed the amount found in his right pocket was $460, the same as that which was stolen from the credit union. GOWERS was booked into the MCC on federal charges

on December 9, 2020, and was still wearing the **Target Property** at the time he was booked into custody.

22. In my professional training, education, and experience, bank robberies require planning and coordination in the days, weeks and sometimes months prior to the event. Given that the bank robbery occurred on December 8, 2020, I request permission to search **the Target Phone** for evidence beginning November 8, 2020, up to an including December 8, 2020.

## CONCLUSION

23. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that GOWERS used the **Target Phone** to facilitate the offense of bank robbery. The **Target Phone** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2113. I further believe that probable cause exists to conclude that the **Target Property** was worn by GOWERS during the commission of the robbery and constitutes evidence and instrumentalities of violations of Title 18, United States Code, Section 2113.

24. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed by GOWERS continues to exist on the **Target Phone,** which has remained in FBI custody since GOWERS' arrest.

//
//
//
//
//
//
//
//

25. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with the Federal Bureau of Investigation, or another federal law enforcement agent specially trained in digital evidence recovery, to search the item described in Attachment A-1, and seize the items listed in Attachments B-1 and B-2.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*[signature]*

Jesse M. Stoda

FBI Special Agent

SUBSCRIBED and SWORN to before me this 22 day of December, 2020

*[signature]*

HON. MICHAEL S. BERG

United States Magistrate Judge

# **ATTACHMENT A-2**
# **ITEMS TO BE SEARCHED**

None.

## ATTACHMENT B-2
## ITEMS TO BE SEIZED

Any and all clothing worn by Cary GOWERS on December 8 and 9, 2020, including a gray zip-up hooded sweatshirt with a red logo on the back, dark shirt, blue jeans, and white shoes, which constitutes evidence of violations of Title 18, United States Code, section 2113(a) (bank robbery).